UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL CHRISTIAN,

          Plaintiff,

v.

AFNI, INC.,

          Defendant.
_____/

COMPLAINT

**I.**    **Introduction**

      1.    This is an action for damages brought against a debt collector for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Michigan

Occupational Code ("MOC") M.C.L. § 339.901 *et seq.*

**II.**    **Jurisdiction**

      2.    This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C.

§ 1331.  This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28

U.S.C. § 1367.  Venue in this judicial district is proper because the pertinent events took place

here.

**III.**    **Parties**

      3.    Plaintiff Michael Christian is a natural person residing in Kent County, Michigan.

Mr. Christian is a "consumer" and "person" as the terms are defined and used in the FDCPA.

Mr. Christian is a "consumer," "debtor" and "person" as the terms are defined and used in the

1

MOC.

4.      Defendant Afni, Inc. ("Afni") is an Illinois corporation, purportedly with offices located at 1310 Martin Luther King Drive, Bloomington, Illinois 61702. The registered agent for Afni in Michigan is The Corporation Company, 30600 Telegraph Road, Suite 2345, Bingham Farms, Michigan 48025. Afni uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Afni regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Afni is a "debt collector" as the term is defined and used in the FDCPA. Afni is licensed (No. 2401001721) by the State of Michigan to collect consumer debts in Michigan. Afni is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

**IV.    Facts**

5.      Mr. Christian had a credit account with AT&T Mobility ("AT&T") which he used to obtain goods and/or services for personal, family and household purposes. Any resulting obligation of Mr. Christian to pay money to AT&T was a "debt" as the term is defined and used in the FDCPA and MOC.

6.      Mr. Christian discontinued his service with AT&T.

7.      Apparently, AT&T claimed that Mr. Christian owed an unpaid and delinquent debt to AT&T.

8.      Mr. Christian disputes owing the debt claimed by AT&T.

9.      Mr. Christian refuses to pay the debt claimed by AT&T.

10.     Apparently, AT&T placed Mr. Christian's account and alleged, delinquent debt with Afni for collection.

2

11.     By letter dated August 6, 2014, Afni wrote Mr. Christian regarding the alleged debt.  The letter was captioned "COLLECTION NOTICE" and stated that Mr. Christian's account had "been placed with our agency for collection."  The letter stated that Mr. Christian owed a balance of $835.28, that Afni was willing to accept $417.64 to settle the account, and that the offer would be valid until September 20, 2014.  The letter also stated: "Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid."  The letter invited Mr. Christian to contact Afni by telephone at 877-859-8781.  A copy of the letter is attached hereto as Exhibit A.

12.     On or about August 14, 2014, Mr. Christian placed a telephone call to Afni at 877-859-8781 and spoke with a female Afni employee.  The Afni employee stated multiple times that Afni was recording the conversation.  Mr. Christian stated that he was calling in response to the letter he had received from Afni.  The Afni employee stated that AT&T had placed Mr. Christian's account with Afni for collection.  Mr. Christian stated that he needed time to locate and review his records regarding the account.  The Afni employee stated that Mr. Christian owed a balance of $835.28, that Afni was willing to accept $417.64 to settle the account, and that the offer would be valid until September 20, 2014, after which time Mr. Christian would owe the full balance.  Mr. Christian stated that he disputed the account and related debt.  In the ensuing conversation, the Afni employee made the following representations:

a)      Mr. Christian's account would be noted as "disputed" in Afni's internal records.

b)      If Mr. Christian did not accept Afni's settlement offer, his account would become "eligible for credit reporting" on September 21, 2014.

3

c)      The Afni employee did not know whether Afni after September 21, 2014 might offer to settle the account for less than the full balance.

d)      Mr. Christian's oral dispute would be noted in Afni's internal records.

e)      If Mr. Christian wanted Afni to provide verification of the debt, Mr. Christian was required to send a letter to Afni and state *why* he was disputing the debt.

f)      In answer to Mr. Christian's express question regarding whether Afni when reporting the debt to the credit bureaus also would communicate to the credit bureaus that Mr. Christian had disputed the debt, the Afni employee replied:  "If the dispute is still on the account, then it will be reported as delinquent and disputed."

g)      If Mr. Christian wanted verification of the debt, "you have to send a letter of dispute with the Afni account number, stating you're disputing it and why you're disputing it."

h)      In six to twelve months, AT&T will take the account back from Afni and place it with another collection agency.

i)      If Mr. Christian does send a letter of dispute to Afni, Mr. Christian's dispute will only be noted as disputed in Afni's office, and "AT&T won't be notified of the dispute unless you send a letter in writing."

j)      Mr. Christian demanded that when Afni communicates with AT&T about the account, Afni must also communicate to AT&T that Mr. Christian has disputed the account by telephone with Afni, and the Afni employee

4

replied: "That's not the process.  You can't dispute the account by phone.
Their policy is to dispute in writing.  Otherwise, there is no dispute."

k)   "Were not telling AT&T anything.  You send a letter or you don't send a
letter. . . .  If you want AT&T to be notified of your dispute, you send a
letter."

l)   "There is no such thing as a verbal dispute for you.  It's a written dispute.
That's what AT&T requires if you're disputing the account.  If you don't
do that, then, too bad!"

m)   "You have the option of disputing in writing and that's that."

n)   "If you don't send a letter, then the account is not going to disputed
through AT&T's eyes."

13.   The FDCPA does not require the consumer to provide *any reason at all* in order
to dispute a debt.  *Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234 (D. Haw. 2002);
(*Mendez v. M.R.S. Assoc.*, 2004 WL 1745779 *2 (N.D. Ill. Aug. 3, 2004) (a consumer is entitled
to dispute the validity of a debt for a good reason, a bad reason, or no reason at all); *Whitten v.
ARS National Servs. Inc.*, 2002 WL 1050320 *4 (N.D. Ill. May 23, 2002) (imposing a
requirement that a consumer have a 'valid' reason to dispute the debt is inconsistent with
FDCPA); *Castro v. ARS National Servs., Inc.*, 2000 WL 264310 (S.D.N.Y. Mar. 8, 2000); *Frey
v. Satter, Beyer & Spires*, 1999 WL 301650 (N.D. Ill. May 3, 1999); *DeSantis v. Computer
Credit, Inc.,* 269 f.3d 159 (2nd Cir. 2001); *Mejia v. Marauder Corporation,* 2007 WL 806486
(N.D. Cal. 2007) (unlawful to suggest that proof of payment required for dispute).

14.   Afni's employee falsely represented and falsely implied to Mr. Christian, multiple

5

times, that to dispute the debt, Mr. Christian was required to explain to Afni and AT&T, in writing, *why* he disputed the debt.

15.    Credit reporting by a debt collector constitutes an attempt to collect a debt.  *See, e.g., Rivera v. Bank  One,* 145 F.R.D. 614, 623 (D.P.R. 1993)(a creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed, in part, to wrench compliance with payment terms from its cardholder"); *Matter of Sommersdorf*, 139 B.R. 700, 701 (Bankr.S.D. Ohio 1991); *Ditty v. CheckRite, Ltd.,* 973 F.Supp. 1320, 1331 (D.Utah 1997).  Debt collectors frequently will threaten to harm the consumer's credit as a cost effective way to coerce payment of a small debt.  However, Congress has placed limit on that collection tool

16.    Two consumer protection laws, the FDCPA (regulating debt collection) and the Fair Credit Reporting Act ("FCRA") (regulating credit reporting) work together to empower the consumer to mitigate the harm that a debt collector can do to the consumer's credit.

17.    The FDCPA states that it is unlawful for a debt collector to communicate or threaten to communicate to any person credit information which is known or which should be known to be false, "including the failure to communicate that a disputed debt is disputed."  15 U.S.C. § 1692e(8).

18.    The FDCPA does not require the consumer to dispute the debt in writing in order to invoke the protections of 15 U.S.C. § 1692e(8).  *See, e.g., Brady v. The Credit Recovery Company, Inc.,* 160 F.3d 64 (1ˢᵗ Cir. 1998); *Camacho v. Bridgeport Fin. Inc.* 430 F.3d 1078 (9ᵗʰ Cir. 2005); *Jerman v. Carlisle,* 464 F.Supp.2d 720 (N.D. Ohio 2006); *Turner v. Shenandoah Legal Group, P.C.,* 2006 WL 1685698 (E.D. Va. June 12, 2006); *Hipolito v. Harris & Zide,* 2004

6

WL 3563366 (N.D. Cal. 2004).

19.     The FDCPA contains no limitation on the time during which a consumer may dispute a debt and trigger a debt collector's obligation to comply with 15 U.S.C. § 1692e(8).

20.     The FCRA states that if a consumer has disputed a debt with the creditor or other furnisher of information (such as a debt collector), the furnisher may not report the debt to a consumer reporting agency unless it also discloses that the debt is disputed by the consumer.  15 U.S.C. § 1681s-2(a)(3).  In turn, the consumer reporting agency must note in future consumer reports containing information regarding the account that the consumer disputes the debt.

21.     Afni and its employee falsely represented and falsely implied to Mr. Christian that to dispute the debt, Mr. Christian was required to dispute the debt in writing with Afni.

22.     Afni and its employee falsely represented and falsely implied to Mr. Christian that Mr. Christian could not dispute the debt by telephone with Afni.

23.     Afni and its employee falsely represented and falsely implied to Mr. Christian that to dispute the debt, Mr. Christian was required to provide a reason for his dispute to Afni.

24.     Afni and its employee made false representations regarding the rights of a consumer under the FDCPA and Michigan law to dispute a debt.

25.     Afni and its employee falsely represented and falsely implied to Mr. Christian that to dispute the debt, Mr. Christian was required to provide a reason for his dispute to Afni.

26.     Afni when communicating with AT&T in the future regarding the account was required by law also to communicate to AT&T that Mr. Christian had disputed the debt. 15 U.S.C. § 1692e(8).

7

27.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. § 1692e(5).

28.     The Afni employee wrongfully threatened that Afni would not communicate to AT&T that Mr. Christian had orally disputed the debt.

29.     The Afni employee falsely represented and falsely implied that despite Mr. Christian's oral dispute of the debt with Afni, it was possible that Afni when reporting the debt to the credit bureaus might not communicate to the credit bureaus that Mr. Christian had disputed the debt, stating:  "If the dispute is still on the account, then it will be reported as delinquent and disputed."

30.     Afni and its employee made false representations to Mr. Christian regarding Mr. Christian's rights under the FDCPA and Michigan law to dispute a debt.

31.     Afni and its employee wrongfully represented and wrongfully implied that Afni would not communicate to the credit bureaus that Mr. Christian disputed the debt unless Mr. Christian disputed the debt in writing with Afni and provided Afni with a reason for the dispute.

32.     It is unlawful for a debt collector to make a false representation of the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

33.     It is unlawful for a debt collector to use "any false representation or deceptive means to collect or attempt to collect any debt. . . ."  15 U.S.C. § 1692e(10).

34.     Afni and its employee violated the FDCPA, 15 U.S.C. § 1692e(2)(A), (5), (8) and (10).

35.     Afni and its employee falsely represented and falsely implied to Mr. Christian that if Mr. Christian did not settle with Afni by September 21, 2014, then it was possible that Afni

8

might not again offer to settle the debt at a discount with Mr. Christian. In fact, the underlying

agreement by which AT&T hired Afni to collect the debt from Mr. Christian expressly authorizes

Afni to settle the debt with Mr. Christian at a discount, even if Mr. Christian did not settle the

debt with Afni by September 21, 2014. The Afni employee regularly settles debts with

consumers and on behalf of AT&T after the initial settlement offer has expired. The Afni

employee's representation that she did not know whether Afni would ever again offer to settle

Mr. Christian's account at a discount after the initial settlement offer had expired was simply a

lie.

36.     Each false representation and false implication made by Afni and its employee

regarding the settlement process, the dispute process, credit reporting, and Mr. Christian's related

rights as afforded by the FDCPA and Michigan law, would tend to mislead or confuse the

reasonable, least sophisticated consumer.

37.     The reasonable, least sophisticated consumer, could be mislead, confused and

coerced into paying a disputed debt, upon hearing the false representations and false implications

made by Afni and its employee. Stated differently, the misrepresentations made to Mr. Christian

by Afni and its employee were material misrepresentations.

38.     The Afni employees who spoke by telephone with Mr. Christian intended to

speak to Mr. Christian the words that the Afni employees spoke to Mr. Christian.

39.     The FDCPA states in part, "It is the purpose of this subchapter to eliminate

abusive debt collection practices by debt collectors" and "to insure that those debt collectors who

refrain from using abusive debt collection practices are not competitively disadvantaged." 15

U.S.C. § 1692(e).

40.     Afni, to increase its business and profits, has knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

41.     The acts and omissions of Afni and its employee done in connection with efforts to collect the alleged debt from Mr. Christian were done intentionally and wilfully.

42.     Afni and its employee intentionally, knowingly and wilfully violated the FDCPA and MOC.

43.     As an actual and proximate result of the acts and omissions of defendant and its employees and/or agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established by jury and at trial.

**V.    Claims for Relief**

**Count 1 – Fair Debt Collection Practices Act**

44.     Plaintiff incorporates the foregoing paragraphs by reference.

45.     Defendant has violated the FDCPA.  Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)     Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt; and

b)     Defendant violated 15 U.S.C. § 1692g.

10

**Wherefore,** plaintiff seeks judgment against defendant for:

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

### Count 2 – Michigan Occupational Code

46.      Plaintiff incorporates the foregoing paragraphs by reference.

47.      Defendant has violated the MOC.  Defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)      Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b)      Defendant violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, and (ii) the legal rights of a creditor or debtor;

c)      Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

d)      Defendant violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)      Actual damages pursuant to M.C.L. § 339.916(2);

b)      Treble the actual damages pursuant to M.C.L. § 339.916(2);

c)      Statutory damages pursuant to M.C.L. § 339.916(2); and

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

**Demand for Trial by Jury**

Plaintiff demands trial by jury.


Dated: August 18, 2014

/s/ Phillip C.  Rogers
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com

12